USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 9/25/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
JOSE T. VERE,

                             Petitioner,

-against-

WILLIAM T. HAGGETT, Superintendent,
Mt. McGregor Correctional Facility,

                             Respondent.

----------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

08 Civ.10852 (KMK)(GAY)

TO:    THE HONORABLE EDGARDO RAMOS, U.S. DISTRICT JUDGE

## I. INTRODUCTION

On December 8, 2005, pursuant to a judgment of the County Court of Dutchess County (Dolan, J.), Jose T. Vere ("petitioner" or "Vere") was convicted upon a plea of guilty of one count of the Class B Violent Felony of Criminal Sexual Act in the First Degree, N.Y. Penal Law § 130.50 (3) and was sentenced to a determinate prison term of eight years in state prison with a five year period of post-release supervision. He was released on February 27, 2012 and is currently on parole. Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. For the reasons set forth below, I respectfully recommend that the Court deny the petition in its entirety.

## II. BACKGROUND[1]

---

[1] Unless otherwise noted, the facts within this section are taken from Petitioner's Application for a Writ of Habeas Corpus, Respondent's Affidavit in Answer to a Petitioner for a Writ of Habeas



Petitioner was indicted by a Rockland County grand jury on one count of Criminal Sexual Act in the First Degree, N.Y. Penal Law § 130.50 (3), on April 12, 2005. (Ex. 4.) The Bill of Particulars states that on or about April 12, 2005 between 5:45 p.m. and 8:05 p.m. at the Hudson River Housing in the Town of LaGrange, petitioner licked the vagina of a seven year old girl with his tongue. (Ex. 5.) Petitioner was fifty-five years old and the child was his granddaughter's playmate. On September 13, 2005, petitioner was arraigned on the indictment and entered a plea of not guilty. He was served with the Bill of Particulars, Voluntary Discovery and a Huntley Notice pursuant to N.Y. Civ. Proc. Law § 710.30, indicating that the prosecution intended to offer evidence at trial of a statement petitioner made to Dutchess County Sheriff's detectives wherein he admitted licking the child's vagina and further stated that the child asked him to do so and had engaged in "dirty dancing" for him. (See Ex. 6.) By pretrial omnibus motion, petitioner, through counsel, moved to suppress statements made to the Dutchess County Sheriff's detectives. By Decision and Order dated November 15, 2005, the Rockland County Court (Dolan, J.), directed, *inter alia*, that a Huntley hearing be held immediately prior to trial. On November 16, 2005, petitioner entered a plea of guilty to the indictment. (Ex. 11.) Petitioner was sentenced on December 8, 2005 to the bargained for eight year determinate term followed by a five year period of post-release supervision. (Ex. 12.)

Petitioner, through his appellate counsel, appealed his conviction to the New York State Appellate Division, Second Department, on the grounds that his sentence was excessive and his guilty plea was unintelligent as Sex Offender Registration Act ("SORA") consequences were not mentioned at the time of his plea. (Ex. 13.) Prior to

---

Corpus (hereinafter "Resp't Aff.") and Appellant Jose Vere's Main Brief (hereinafter "Appellant Br.") (attached to Resp't Aff., at Ex. 13). All exhibits cited herein are to Resp't Aff.

the disposition of his appeal, petitioner, acting *pro se*, filed a motion to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10, arguing that he was denied the effective assistance of counsel during the pre-plea and plea allocution stages of his case. (Ex. 17.) The Dutchess County Court (Dolan, J.) denied defendant's motion on August 8, 2007. (Ex. 19.) Petitioner did not seek leave to appeal this denial.

The Second Department affirmed petitioner's judgment of conviction in a written decision dated October 2, 2007. See People v. Vere, 843 N.Y.S.2d 378 (N.Y. App. Div. 2007). Petitioner sought leave to appeal to the New York Court of Appeals, which was denied on December 5, 2007. See People v. Vere, 880 N.E.2d 884 (N.Y. 2007).

On February 26, 2008, petitioner filed a second motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10, alleging that his right to counsel was violated when a caseworker from the Dutchess County Social Services interviewed him outside the presence of counsel and again, alleging ineffective assistance of his trial counsel, this time due to a conflict of interest. On May 16, 2008, the Court denied defendant's motion. (Ex. 22.) Thereafter, petitioner filed a motion with the Second Department pursuant to N.Y. Crim. Proc. Law seeking to appeal the May 16, 2008 order. (Ex. 23.) This was denied on September 5, 2008. (Ex. 25.)

Petitioner timely filed a Petition for Writ of Habeas Corpus on November 14, 2008. He primarily reasserts the claims raised in his direct appeal and in his collateral post-conviction motions: 1) confession was obtained involuntarily; 2) confession to case workers violated right to counsel; 3) ineffective assistance of trial counsel; 4) guilty plea

was involuntary; 5) ineffective assistance of appellate counsel.  In addition, he claims that his bail was excessive.

## III. APPLICABLE LAW

### A. AEDPA Standard of Review

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a).  Subsequent to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, a federal court may not grant habeas relief for any claim adjudicated on the merits in state court unless the petitioner establishes, in pertinent part, that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases" or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court of the United States] and nevertheless arrives at a result different from [Supreme Court of the United States] precedent." Williams v. Taylor, 529 U.S. 362, 405 (2000).

Under § 2254(d)(1)'s "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Finally, under AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. §2254(e)(1). The petitioner must rebut this presumption by "clear and convincing evidence." Id.

B. Exhaustion Requirement

A federal court may not grant a writ of habeas corpus unless a petitioner has exhausted his remedies available in the state courts. 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. Rose v. Lundy, 455 U.S. 509, 518-19 (1982). A petitioner exhausts his state-court remedies by "fairly present[ing]" each federal claim for relief to the highest state court capable of review. Baldwin v. Reese, 541 U.S. 27, 29 (2004). If a claim is not fairly presented to the state courts, the habeas court will nonetheless deem it exhausted if "it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in

5

the state forum would be futile." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Notwithstanding the procedure described above, "[a]n application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." See 28 U.S.C. § 2254(b)(2); Padilla v. Keane, 331 F.Supp.2d 209, 216 (S.D.N.Y.2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### C. Procedural Default

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or show "that failure to consider the claims will result in a fundamental miscarriage of justice." See Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Lee v. Kemna, 534 U.S. 362, 375 (2002). This "independent and adequate state ground" doctrine "ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." Coleman, 501 U.S. at 732.

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Coleman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and

regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

## IV. ANALYSIS OF PETITIONER'S CLAIMS

### A. Grounds One and Four: Confession and Guilty Plea Were Involuntary

#### 1. Guilty Plea

In his fourth claim, petitioner claims that his guilty plea was not voluntary because 1) the trial court should have ordered a competency hearing; 2) the trial court did not mention SORA as a consequence to pleading guilty; 3) he did not understand the implications of his attorney's conflict of interest; 4) he did not understand the charges against him.

Petitioner's first reason—that a competency hearing should have been held—is being raised for the first time on federal habeas review and is therefore unexhausted. For Vere to return to state court to exhaust the claim, however, would be futile since it is procedurally defaulted. See Aparicio, 269 F.3d at 90. Only one leave application may be made to the New York Court of Appeals; since petitioner has made that application, he is procedurally barred from making an additional one. See N.Y. Ct. Rules § 500.20(a)(2). Vere has not attempted to show cause for the default, or prejudice resulting therefrom. Moreover, he has not made a showing of actual innocence so as to justify the "fundamental miscarriage of justice" exception.

Petitioner's claim is also without merit. "A hearing to determine the mental competency of a criminal defendant is required only if the court has reasonable cause to believe that the defendant has a mental defect rendering him incompetent." United States v. Zhou, 428 F.3d 361, 379 (2d Cir.2005) (quotation marks and citation omitted).

"A trial court must consider many factors when determining whether it has reasonable cause to order a competency hearing, including, evidence of a defendant's irrational behavior, the defendant's demeanor at trial, and any prior medical opinion on competence to stand trial." Quail v. Farrell, 550 F.Supp.2d 470, 479-80 (S.D.N.Y. 2008) (citation omitted). Here, the trial court observed Vere's demeanor and engaged him in a properly articulated colloquy, which included a query about whether petitioner had undergone any psychiatric examinations (to which petitioner responded in the negative). (See Ex. 11 at 9:25-10:2-6). Thus, a competency hearing was not required on this record.

Vere's second reason—that SORA consequences were not mentioned at his plea allocution—was denied on the merits by the Appellate Division, Second Department. The Court stated that the requirement to register as a sex offender was a collateral, not direct consequence of his conviction and thus, the "absence of such a warning did not undermine the voluntariness of [his] plea." Respondent asserts that this claim was not presented to the state courts in federal constitutional terms and is unexhausted.[2] Again, the Court may deem a claim exhausted if further state court review would be barred by procedural default. Aparicio, 269 F.3d at 90. Alternatively, the Court may reach it on the merits to deny it. See 28 U.S.C. § 2254(b)(2).

SORA "requires persons convicted of certain listed sex offenses to register with law enforcement officials, and it authorizes those officials, in some instances, to notify the public of, or provide the public with access to, the identity, whereabouts, and background of registrants. Doe v. Pataki, 120 F.3d 1263, 1266 (2d Cir. 1997). The

___

[2] Counsel's argument on direct appeal, based entirely on state law, was that the Second Department and New York Court of Appeals "should rethink the issue [of whether SORA consequences are collateral, not direct] . . . ." See Appellant Br. at 15-16.

stated goal of the Act is not to punish the convicted person, but to protect members of the community by notifying them of the presence of individuals who may present a danger. Id.

Courts in this Circuit have determined that the SORA registration requirement is a collateral, not a direct, consequence of a person's conviction. See, e.g., Davis v. Nassau Co., 524 F.Supp.2d 182, 187-88 (E.D.N.Y. 2007) ("The sex offender registration requirement . . . is clearly a collateral consequence of the conviction"); cf. Rodriguez v. Attorney General, No. 10 Civ. 3868, 2011 WL 3875328 (S.D.N.Y. September 2, 2011) (registration requirements of SORA were "collateral consequences" not satisfying the "in custody" requirement of a habeas corpus petition); Stephens v. United States, No. 06 Civ. 5386, 2007 WL 1233557, at *3 (E.D.N.Y. April 25, 2007) ("Registration as a sex offender is a collateral effect and improper advice as to such a collateral effect does not support an ineffective assistance of counsel claim."); accord Williamson v. Gregoire, 151 F.3d 1180 (9th Cir.1998) (sex offender law creates a mere collateral consequence of conviction as registration is "regulatory and not punitive") (citation omitted). See also Torres v. Ercole, No. 07 Civ. 8090, 2011 WL 5986979, at *15 n.9 (S.D.N.Y. November 29, 2011) ("The Supreme Court has not held that a court must advise a criminal defendant of the registration provisions of SORA during the course of a guilty plea").

Based on the foregoing, Vere cannot show, as he must, that the basis of the state court's denial of his SORA-based involuntariness claim was contrary to or involved an unreasonable application of clearly established Federal law.  Moreover, as pointed out by the Second Department, although the trial court did not warn Vere of the SORA

requirements during the plea allocution, it did so during the course of sentencing. See People v. Vere, 843 N.Y.S.2d 378; Sentencing Tr., Ex. 12 at 5:25-6:1-4.

Finally, there is no evidence in the record to support petitioner's claim that he did not fully understand the implications of his attorney's potential conflict of interest. As indicated above, the trial court conducted a full plea colloquy, which included questioning on this issue:

> The Court: I was informed this morning, Ms. Boyer, by your office that the victim's mother here was a former client of your staff; is that correct?
>
> Ms. Boyer: Yes, your Honor. We represented her about a year ago, another attorney in my office. I have explained this to Mr. Vere and he waives any issues in that regard.
>
> The Court: Is that correct Mr. Vere?
>
> [Petitioner]: Yes, your Honor.
>
> Ex. 11 at 11.

Petitioner did not raise this issue in his first § 440 motion, but did so in his second § 440 motion. See Ex. 20. The County Court summarily denied it, stating that the issue could have been raised either prior to sentencing or upon his direct appeal. Having failed to do so, petitioner was barred from raising it then. See Ex. 22 at 2; N.Y. Crim. Proc. Law §§ 440.10 (2)(c), 440.10 (3)(a). Further, the County Court stated that petitioner's first Motion to Vacate "touched upon the conflict of interest issue" and thus, he was barred from addressing the same issue in the second. See Ex. 22 at 3; N.Y. Crim. Proc. Law §§ 440.10 (3)(b), (c). As a result of this procedural default, petitioner is barred from receiving habeas relief based upon the independent and adequate state procedural grounds doctrine.

At any rate, petitioner's claim does not have merit. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to the effective assistance of counsel also includes the right to be represented by an attorney who is free from conflicts of interest. See, e.g., United States v. Kliti, 156 F.3d 150 (2d Cir. 1998). The Second Circuit has identified three levels of conflicts of interest: "(1) a per se conflict, requiring automatic reversal without a showing of prejudice; (2) an actual conflict, carrying a presumption of prejudice; and (3) a potential conflict, requiring a finding of both deficient performance by counsel and prejudice." Casso v. United States, No. 00 Civ. 6973, 2001 WL 1517537, at *2 (E.D.N.Y. November 20, 2001) (citing United States v. John Doe No. 1, 272 F.3d 116, 125 (2d Cir. 2001)). An attorney operates under a potential conflict of interest if his own interests "may diverge at some point [with his client's] so as to place the attorney under inconsistent duties." Moseley v. Scully, 908 F.Supp.1120, (E.D.N.Y. 1995).

Here, petitioner's counsel was an attorney with the Public Defender's Office. At some point in the past, another attorney in the Public Defender's Office represented the victim's mother in, according to respondent, a case involving welfare fraud. See Resp't Mem. of Law at 15. At most, petitioner's counsel had a potential conflict. In order to establish prejudice, the petitioner must demonstrate that his attorney's conduct fell below an objective standard of reasonableness and that, but for the deficient performance, the result would have been different. See Casso, 2001 WL 1517537, at *2; Strickland v. Washington, 466 U.S. 668, 688 (1984). That scenario was highly unlikely here as it was not petitioner's trial counsel who represented the victim's mother;

the victim's mother was represented by another attorney at a time not concurrent with petitioner's case. Petitioner cannot show that this attenuated relationship affected his trial counsel so as to have any effect on the representation. Moreover, Vere was aware of the issue and waived any conflict.

    2. Confession

Petitioner's first claim is that his confession was obtained involuntarily in violation of his constitutional rights. He states that two Dutchess County detectives arrived at his room at about midnight on April 12, 2005, removed his granddaughter and brought him to the police station. There was no warrant for his arrest and he was interrogated without a lawyer present. He confessed, he says, because he just wanted to go home with his granddaughter. See Pet. at 2. In his Reply Brief, petitioner argues that he "is not framing this claim solely in terms of a suppression issue, but primarily as an ineffective assistance of counsel issue . . . ." See Reply Br. at 1-2. He cannot be deemed to have waived any constitutional right, he states, "because he was denied the right to conflict free counsel and this is a fundamental fatal flaw to the subject state court proceedings, because the right to conflict free counsel is the right that makes all other rights cognizable."

As stated above, petitioner knew about the potential conflict of his counsel, did not raise it on appeal and it is thus procedurally defaulted. In addition, although petitioner initially challenged the voluntariness of his confession in his motion for a pre-trial suppression hearing (see Ex. 8, ¶¶ 23-29), he abandoned this challenge when he entered his guilty plea before the hearing was held. "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal

defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). See also Farkas v. Girdich, No. 03 Civ. 9758, 2010 WL 2367269, at *5 (S.D.N.Y. June 11, 2010) ("It is . . . the law in New York, established by judicial decisions, that a defendant who pleads guilty prior to the judicial determination of suppression issues waives all such issues and forfeits the right to have them reviewed upon appeal or on a collateral motion to vacate a judgment of conviction."). Thus, "[a] petitioner's unconditional guilty plea waive[s] all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of his plea." Vasquez v. Parrott, 397 F.Supp.2d 452, 463 (S.D.N.Y.2005) (citations omitted). "[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir.1988).

Moreover, the record demonstrates that Vere's guilty plea was voluntary and intelligent. The trial judge informed Vere of his absolute right to a trial and specifically asked if he waived his right to a trial, appeals, or other proceedings. See Ex. 11 at 3-7. Vere answered affirmatively to the trial judge's questions regarding whether he wished to plead guilty, whether he engaged in oral sexual contact with a child less than eleven years of age and whether he knew the victim was less than eleven years of age. See

id. at 3, 11-12.  Further, petitioner acknowledge that he had discussed all of his options with his attorney, was satisfied with her advice, understood the circumstances of the agreement and that no one coerced him or promised him anything in order for him to plead guilty.  See id. 6-10.

In any event, Vere's claim that his confession should have been suppresed cannot now be raised in a habeas corpus petition.  See Farkas, 2010 WL 2367269, at *8.  Moreover, any ineffective assistance of counsel claims that relate to conduct that preceded his guilty plea cannot form the basis of a successful habeas petition.  (See Part IV-C, infra.)

For the foregoing reasons, I respectfully recommend that petitioner's first and fourth claims be denied.

### B. Ground Two: Confession to Child Protective Services ("CPS") Workers

Petitioner's second claim is that at the time he made certain confessions to Child Protective Services workers, his right to counsel had attached.  Since they were "agents of the Dutchess County Sheriffs [sic] Department," petitioner asserts, any statements he made to them should have been suppressed.  See Pet. at 3-4.  Petitioner raised this issue for the first time in his second motion pursuant to N.Y. Crim. Proc. Law § 440.  The County Court denied it pursuant to N.Y. Crim. Proc. Law §§ 440.10 (c)(2), 440.10 (3)(a), stating, in essence, that it was procedurally defaulted.  Petitioner's appeal was denied.

Petitioner has not demonstrated cause for the default and actual prejudice as a result of the purported violation.  Nor has he demonstrated that failure to consider the claim will result in a "fundamental miscarriage of justice."  See Coleman, 501 U.S. at

750. As the decision by the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment, petitioner is barred from raising this claim as a basis for habeas relief.

Moreover, according to the <u>Huntley</u> notice issued by Dutchess County District Attorney, <u>see</u> Ex. 6, the prosecution intended only to offer evidence of the statement made by petitioner to the Dutchess County Sheriff's detectives on April 12, 2005 and not the statement he made to the Child Protective Services workers on April 30, 2005. Aside from having waived his right suppress his statements by virtue of his guilty plea, the statements to the CPS workers were not part of the case against him and thus, are irrelevant. Accordingly, I respectfully recommend that this claim be denied.

### C. Ineffective Assistance of Counsel

Petitioner claims that his trial counsel 1) did not have any contact with his Family Court attorney and he therefore had to admit guilt in the Family Court; 2) did not properly investigate his case and thus, failed to determine that she had a conflict of interest until late in the case; 3) failed to properly investigate circumstances of the case (i.e., failed to interview petitioner's granddaughter, who was present at the time of the sexual act for which petitioner as convicted, failed to note that there was no medical evidence or that the victim refused to be examined by a doctor); 4) was not prepared and as a result, improperly advised petitioner not to go to trial; 5) denied him the right to see a psychiatrist outside of jail; 6) did not request a formal fitness hearing; 7) did not inform the district attorney that he wished to testify before the grand jury and did not present alibi evidence or witnesses on his behalf; 8) was uncomfortable with the prospect of cross-examining a child witness at trial; 9) surrendered the omnibus motion

prematurely and should have known that petitioner had a chance to have his confession suppressed; and 10) failed to offer any mitigating factors in order to reduce petitioner's sentence.

Petitioner's claims relate to alleged prior events that did not affect the voluntariness of his guilty plea. He was well aware that "he was facing a very high maximum," see Pet. at 7, and has not demonstrated that the advice he received from his trial counsel fell below an acceptable standard. See White v. Kelly, No. 95 Civ. 1697, 1998 WL 34002707, at *2 (N.D.N.Y. April 17, 1998) ("When an ineffective assistance of counsel claim is made, the petitioner must: (1) establish that 'counsel's representation fell below an objective standard of reasonableness, which is determined by the range of competence demanded of attorneys in criminal cases'; and, (2) show 'a reasonable probability that but for counsel's errors, he would not have plead guilty and would have insisted on going to trial.'") (quoting Panuccio v. Kelly, 927 F.2d 106, 108 (2d Cir.1991)).

Petitioner has not met this burden. Accordingly, I respectfully recommend that his claim of ineffective assistance of counsel be dismissed.

### D. Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel was ineffective because she did not raise the ground of ineffective assistance of trial counsel on his direct appeal to the Appellate Division. She did not raise this claim, petitioner states, "even though she recognized that my trial counsel had an actual conflict of interest . . . . Then reversing her position . . . stating that my counsel was effective . . . ." See Pet. at 12.

16

Petitioner's claim that his appellate counsel was ineffective is unexhausted. New York permits defendants to raise ineffective assistance of appellate counsel by seeking a writ of error coram nobis. Smith v. Duncan, 411 F.3d 340, 347 n. 6 (2d Cir.2005). Petitioner has not done so. Nonetheless, his claim fails on the merits.

Claims of ineffective appellate counsel are analyzed under the same Strickland standard enunciated for trial counsel. See Jelinek v. Costello, 247 F.Supp.2d 212, 266 (E.D.N.Y. 2003). The Supreme Court has made clear that an insufficient showing on either prong of this standard—deficiency or prejudice—dooms a claim of ineffective assistance of counsel and a court assessing the issue need not address both prongs. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Petitioner's appellate counsel, in her first letter, stated that there *may* have been an actual conflict of interest attributable to his trial counsel. However, presumably after researching the case, the appellate counsel determined that trial counsel had a potential, not an actual conflict. In a letter, she advised petitioner to pursue the issue in the form of a N.Y. Crim. Proc. Law § 440 motion as it concerned conversations off the record; such § 440 motions were outside the scope of her assignment, she said, which was limited to direct appeal. See Kahn letter dated February 27, 2006, attached to Pet. In addition, she told him that she had concluded that petitioner's counsel was not ineffective. In a letter to petitioner, she wrote:

17

> I believe, habving [sic] read your affidavit. [sic][,] that Ms. Boyer is correct that it is no defense to a B felony under PL 130.50 (3) to argue the seven year old initiated the conduct and solicited you.  You are supposed to be a mature adult who knows the law.  You are not permitted to commit a crime against a child who is too young to consent to anything, just because she requests it.  To make such a defense will cause the trial judge to think, 1) you are confessing to the crime and 2) you are delusional and not thinking rationally to believe a seven year old can legally solicit and consent to a sex act.  Thus this advise [sic] by Ms. Boyer is not ineffective assistance . . . .

Id.

Petitioner was not prejudiced by the lack of inclusion of the potential conflict issue in his direct appeal as he waived his right to challenge this issue on the record. See Ex. 11 at 11.  Furthermore, "[a]ppellate counsel does not have a duty to advance every nonfrivolous argument that could be made . . . ."  See Jelinek v. Costello, 247 F.Supp.2d 212, 266-67 (E.D.N.Y. 2003). Here, petitioner's appellate counsel focused on petitioner's two strongest claims.  As such, there was no constitutional violation.

### E. Excessive Bail

Petitioner asserts for the first time that his bail was excessive.  See Pet. at 13.  "It is clear that federal habeas corpus is available to test the constitutionality of the excessiveness—or denial—of bail by a state court to a prisoner awaiting trial."  Miller v. Walker, 413 F.Supp.2d 251, 256 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).  Petitioner's claim, however, became moot upon his conviction.  See, e.g., Lombard v. Mazzuca, No. 00 Civ. 74622, 2003 WL 22900918, at *6 (E.D.N.Y. Dec. 8, 2003).  Accordingly, even if this claim were not procedurally defaulted and/or barred by petitioner's guilty plea, it would provide no basis for habeas relief.

## V. CONCLUSION

For the foregoing reasons, I respectfully recommend that the instant Petition be denied in its entirety.

## VI. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 8(b)(3) of the Rules governing § 2254 proceedings, the parties shall have fourteen (14) days from the receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Rule 11 of the Rules governing § 2254 proceedings; Fed.R.Civ.P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Edgardo Ramos at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10801, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to The Honorable Edgardo Ramos and not to the undersigned.

Dated: September 25, 2012
White Plains, New York

                                      Respectfully Submitted,

                                      _____
                                      GEORGE A. YANTHIS, U.S.M.J.